IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2000

## STATE OF TENNESSEE v. MARIO ROGERS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-09504     Arthur T. Bennett, Judge**

―――――――――

**No. W1999-01454-CCA-R3-CD  - Filed June 26, 2001**

―――――――――

In 1999, a Shelby County jury found the Defendant guilty of aggravated robbery, and the trial court sentenced him as a Range I, standard offender to eight years incarceration.  In this appeal as of right, the Defendant presents the following issues for our review: (1) whether the evidence presented at trial was sufficient to support his conviction; (2) whether the trial court erred by admitting into evidence the gun alleged to have been used in the robbery; (3) whether the trial court erred by allowing testimony by the victim concerning the death of the victim's mother; (4) whether the trial court improperly instructed the jury; and (5) whether the cumulative effect of errors at trial warrants a new trial.  Having reviewed the record, we find no error and accordingly affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Jeffery S. Glatstein, Memphis, Tennessee, for the Appellant, Mario Rogers.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

        In July 1997, the Shelby County Grand Jury indicted the Defendant, Mario Rogers, for one count of aggravated robbery.  In June 1999, a Shelby County jury found the Defendant guilty of aggravated robbery, and the trial court sentenced him as a Range I, standard offender to eight years incarceration.  In this appeal as of right, the Defendant presents the following issues for our review: (1) whether the evidence presented at trial was sufficient to support his conviction; (2) whether the trial court erred by admitting into evidence the gun alleged to have been used in the robbery; (3)

whether the trial court erred by allowing testimony by the victim concerning the death of the victim's mother; (4) whether the trial court properly instructed the jury; and (5) whether the cumulative effect of errors at trial warrants a new trial. We affirm the judgment of the trial court.

On February 9, 1997, the victim, Damien Jamison, a sixteen-year-old high school student, was selling newspapers on a street corner in Memphis. The victim testified that between midnight and 1:00 a.m., a burgundy car in which three males were riding pulled up at his corner. Assuming that the individuals in the car wished to purchase a newspaper, the victim approached the vehicle with a newspaper in hand. According to the victim, when he reached the car, he saw one of the two males in the front seat hand the back-seat passenger what the victim initially believed was money, but what he soon realized was a gun. The back-seat passenger, whom the victim identified as the Defendant, then pointed the gun at the victim and demanded the victim's money. The victim complied with the Defendant's request, giving the Defendant all the money that he had. The victim reported that he did not know how much money he had at the time of the robbery, but recalled that he had less than $500.00 and "guess[ed] it was about a hundred and twenty dollars." After the Defendant took the victim's money, the car pulled away.

By coincidence, two police vehicles stopped during the robbery on the opposite side of the street at the intersection where the crime occurred. Immediately after the incident, the victim ran across the street and reported to one of the police officers that he had just been robbed. He pointed to the burgundy car that was pulling away, and the police officers pursued the vehicle. Shortly thereafter, the officers returned to the corner with the three men who had been riding in the car and asked the victim to identify the men. Jamison stated that he did not clearly see two of the men at the time of the robbery, but he identified the Defendant as the man who had pointed the gun at him. At trial, the victim recalled that the Defendant did not disguise his identity on the night of the crime. The victim stated, "I knew the one who robbed me. I could picture his face good."

Patrolman Jerome Costello of the Shelby County Sheriff's Department testified that in the early morning hours of February 9, 1997, he and his partner, Deputy Robert Latimer, were driving to their patrol district. He reported that while they were stopped at an intersection, the victim, whom he described as "very hysterical [and] scared," approached his car and told him that he had just been robbed. The victim identified the vehicle in which the men who had robbed him were riding and indicated that the man in the back seat of the vehicle had a "shiny gun or pistol." The vehicle was pulling away from the intersection as the victim pointed it out to the officers.

Costello and his partner testified that they followed the vehicle through the intersection, never losing sight of the vehicle, and then activated their emergency equipment. The vehicle pulled into a parking lot, and the officers took all three of the car's occupants into custody. Both officers recalled that at the time they stopped the vehicle, the Defendant was riding in the back seat of the vehicle. After the officers arrested the occupants of the car, they performed a search of the vehicle. The officers found an unloaded silver revolver and $8.75 on the floorboard of the back seat, partially hidden under the seat. A search of the Defendant's person revealed $865.00 in cash, a plastic bag

filled with assorted jewelry, a watch, a keychain, and a health card. In addition, Costello noted that the Defendant was wearing a couple of necklaces at the time of his arrest.

After the officers arrested the three men, the officers transported the men back to the corner where Jamison was giving a statement concerning the robbery to detectives. Costello and his partner had each of the three suspects step out of the sheriff's vehicle separately so that the victim could identify the men. Costello stated that the officers shined a light in each man's face as he exited the vehicle so that the suspects could not clearly see the victim. The victim identified all three suspects as the men who were involved in the robbery and identified the Defendant as the person who had pointed the gun at him.

## I. SUFFICIENCY OF THE EVIDENCE

The Defendant first contests the sufficiency of the evidence used to convict him. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds, State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

Having reviewed the record, we conclude that the State presented sufficient evidence to support the Defendant's conviction for aggravated robbery. Aggravated robbery is defined, in pertinent part, as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a), "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Id. § 39-13-402(a)(1). The victim testified at trial that the Defendant pointed a gun at him from close proximity and demanded his money. He reported that he gave the

Defendant approximately $120.00. As the car containing the Defendant was pulling away from the scene of the crime, the victim identified the vehicle to two police officers, who followed it, never losing sight of it between the time the victim pointed it out and the time the officers stopped the car. The officers then arrested the Defendant, who was sitting in the back seat of the car, where the victim reported he sat at the time of the robbery. The officers found a gun and a small amount of cash at the Defendant's feet, and they found $865.00 cash on the Defendant's person. The victim identified the Defendant immediately after the robbery and at trial as the man who robbed him and stated that he remembered the Defendant's face well. He also testified at trial that the gun found in the vehicle at the time of the Defendant's arrest appeared to be the gun used to rob him. This is ample evidence from which the jury could have adduced the Defendant's guilt. This issue is without merit.

## II. ADMISSION OF GUN INTO EVIDENCE

The Defendant next argues that the trial court erred by admitting into evidence the gun that was allegedly used in the robbery. He contends that the State failed to establish a sufficient chain of custody to support its admission into evidence. Having reviewed the record, we disagree.

"As required by Rule of Evidence 901(a), it is 'well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody.'" State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (quoting State v. Holbrooks, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998)). The requirement of proving an unbroken chain of custody is to demonstrate that there has been no tampering, loss, substitution, or mistake regarding the evidence. State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). "The identity of tangible evidence . . . need not be proven beyond all possibility of a reasonable doubt, and the State is not required to establish facts which exclude every possibility of tampering." Scott, 33 S.W.3d at 760. Moreover, the State's failure to call all witnesses who handled the evidence does not necessarily preclude the introduction of the evidence. State v. John Wayne Gray, No. M1999-01615-CCA-R3-CD, 2000 WL 1131864, at *5 (Tenn. Crim. App., Nashville, July 28, 2000) (citing Braden, 867 S.W.2d at 758-59; State v. Holloman, 835 S.W.2d 42, 46-47 (Tenn. Crim. App. 1992); State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1982)). Instead, evidence may be admitted "when the circumstances surrounding the evidence reasonably establish the identity of the evidence and its integrity." Scott, 33 S.W.3d at 760. Thus, the prerequisite for admission of evidence is reasonable assurance, rather than absolute assurance. State v. Leon Hurd, No. E1999-01341-CCA-R3-CD, 2001 WL 348871, at *16 (Tenn. Crim. App., Knoxville, Apr. 10, 2001). Whether the chain of custody is sufficiently established to justify its admission is a matter within the sound discretion of the trial judge, and the trial court's determination in this regard will not be overturned absent a clearly mistaken exercise of that discretion. Ritter v. State, 462 S.W.2d 247, 249 (Tenn. Crim. App. 1970); State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987).

At trial, the victim was presented with a gun which he identified as the gun used to rob him; he admitted that he was "[n]ot positively sure" that it was the exact gun used, but stated, "it looks like the gun." Patrolman Costello also identified the gun as that found in the back seat of the vehicle in which the Defendant was riding at the time of his arrest. Costello testified that he participated in

collecting the gun into evidence. He recalled that the gun was placed in an envelope, that he labeled the envelope, and that the envelope containing the gun was then transported to the Memphis Police Department property room, where it was secured and stored until trial. When presented with the gun at trial, Costello stated that he recognized the envelope in which the gun had been stored and his own handwriting on the envelope. In addition, Deputy Latimer testified that he participated in collecting the gun into evidence. He reported that he also labeled the unsealed envelope in which the gun had been stored, and he stated that both he and Costello transported the gun to the Memphis Police Department property room, where they tagged it into evidence.

Based on the foregoing, we are satisfied that a sufficient chain of custody was established to support admission of the gun into evidence. There is no indication of tampering, loss, substitution, or mistake associated with admission of the gun. See Braden, 867 S.W.2d at 759. Furthermore, we conclude that even if the trial court erred by admitting the gun into evidence, any such error was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). The victim's testimony that the Defendant robbed him at gunpoint and the officers' testimony that a gun was found on the floorboard of the car where the Defendant was riding immediately after the crime strongly support the jury's conclusion that the Defendant committed the crime of aggravated robbery with a deadly weapon. We find this issue to be without merit.

### III. VICTIM'S TESTIMONY REGARDING HIS MOTHER'S DEATH

The Defendant contends that the trial court erred by allowing the victim to testify about his mother's death. The victim testified that he was on medication at the time of the crime "[f]or hyper-activity, depression, bipolar [disorder] and seizures" and stated that these conditions were caused by the death of his mother when he was five years old. He testified that he and his mother were crossing the street when a man whom his mother knew approached them and began to stab his mother. The victim recalled that his mother picked him up, ran across the street, and then died.

Prior to this testimony, the Defendant objected to its admission. The State argued that the Defendant had made an issue of the victim's condition in opening statements by claiming that the Defendant was nervous at the time of the crime because he was lying.[1] The trial court ruled that the testimony was relevant to explain the Defendant's "nervous condition" at the time of the offense and at trial. In its brief, the State contends that "this testimony was only allowed to give the jury some background into the victim's past and the reason for his exaggerated nervous condition at the scene."

With certain exceptions, all relevant evidence is generally admissible. Tenn. R. Evid. 402. Relevant evidence is that which had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The determination of relevancy is within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Williamson, 919 S.W.2d 69, 78-79 (Tenn. Crim. App. 1995). Relevant evidence may be excluded if "its probative

---

[1] A transcript of opening statements is not included in the record.

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403.

We conclude that the trial court did not abuse its discretion by allowing the victim to testify about the death of his mother. The evidence was presented to explain the victim's behavior at the time of the crime and while testifying. The trial court, as the trier of fact, was in the best position to assess the victim's demeanor and apparently concluded that evidence concerning the victim's reaction to his mother's death would be helpful to the jury in assessing his credibility as a witness. Furthermore, while the probative value of this evidence was slight, admission of the evidence resulted in little, if any, prejudice to the Defendant. See Tenn. R. Evid. 403 (stating that to exclude relevant evidence, its probative value must be substantially outweighed by the danger of unfair prejudice). The only possible prejudice resulting from admission of this evidence was that the testimony may have elicited sympathy from the jury for the victim, but we cannot conclude that this affected the outcome of the trial. Although we find no error by the trial court in admitting this evidence, we are satisfied that even if the trial court did err by admitting this testimony, such error was harmless in light of other strong evidence presented by the State supporting the Defendant's conviction. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## IV. JURY INSTRUCTIONS

The Defendant argues that the trial court erred by failing to instruct the jury on the crime of attempted aggravated robbery.[2] The trial court provided the jury with instructions on the offense of aggravated robbery and the lesser-included offenses of robbery and theft of property under $500.00. The Defendant was indicted for the offense of aggravated robbery. Because inchoate offenses such as attempt are considered lesser-included offenses of the crime charged, see State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999), the crime of attempted aggravated robbery is clearly a lesser-included offense of aggravated robbery.

The Tennessee Supreme Court has adopted the following two-step process for determining if the evidence justifies a jury instruction on the lesser-included offense:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469.

---

[2] The State argues that the Defendant waived this issue by "inviting error." However, the record is not so clear. We will therefore proceed to address this issue on its merits.

We thus turn to consideration of whether "any evidence exists that reasonable minds could accept as to the lesser-included offense." Id. at 469. We conclude that in this case, no evidence was presented to support an inference of attempted aggravated robbery.

Our supreme court has stated that "[w]here the evidence in a record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, the trial court's failure to charge on a lesser offense is not error." State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994). More recently, this Court has held "that the trial court is not obliged to give the lesser-included offense instruction where there is no evidence of the lesser included offense *other than* the very same evidence which supports the greater offense, that is, 'that reasonable minds could accept as to the lesser-included offense.'" State v. Lewis, 36 S.W.3d 88, 100 (Tenn. Crim. App. 2000).

The defense presented no evidence at trial. However, through cross-examination of the victim, the defense in this case questioned the victim's credibility and indicated to the jury that although the victim reported a robbery to police officers present at the scene, he may have kept the money from the sale of newspapers for himself. On appeal, the Defendant argues that the property taken from the victim was never found, despite evidence in the record that $865.00 in cash was found on the Defendant's person at the time of his arrest.

Thus, the undisputed facts of this case are as follows: The Defendant was robbed at gunpoint, and the perpetrator of the crime took a substantial amount of cash from him during the robbery. Police officers followed the car which the victim identified as containing the perpetrator of the crime, never losing sight of the vehicle. When the officers stopped the car, the Defendant was sitting where the victim said the perpetrator sat during the robbery. The officers discovered a gun and a small amount of cash on the floorboard where the Defendant was sitting at the time of his arrest, and the officers found a substantial amount of cash on the Defendant's person. Thus, the record strongly supports the trial court's finding of guilt as to the greater offense of aggravated robbery.

Furthermore, no evidence was presented that the Defendant attempted to take money from the victim, but failed to accomplish the crime charged. Instead, the only evidence that could conceivably support a charge of attempted aggravated robbery is the very same evidence supporting the offense of aggravated robbery. See id. Therefore, the trial court was not obliged to provide an instruction as to the lesser-included offense of attempted aggravated robbery.

Having concluded that no evidence was presented in this case that reasonable minds could accept as to the lesser-included offense of attempted aggravated robbery, we need not address the next prong of the Burns test, which concerns the sufficiency of the evidence supporting a conviction for the lesser-included offense. See Burns, 6 S.W.3d at 469. Failure of the trial court to instruct the jury on the offense of attempted aggravated robbery was not error.

## V. CUMULATIVE EFFECT OF ERRORS

Finally, the Defendant alleges the cumulative effect of trial errors requires that the Defendant be granted a new trial. Because we have found no errors, this issue is without merit.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE