DAVID S. RITTER, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

462 S.W.2d 247.

Court of Criminal Appeals of Tennessee. Sept. 18, 1970.

Certiorari Denied by Supreme Court Jan. 4, 1971.

Robert D. Arnold, Johnson City, for plaintiff in error.
David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty.

Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Blountville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

In two cases the defendant below, David S. Ritter, was indicted for second degree murder and driving while intoxicated. On the trial of the cases together, he was convicted of involuntary manslaughter and sentenced to one to four years' imprisonment and he was convicted of driving while intoxicated and sentenced to pay a fine of $100. From these judgments he appeals to this court.

At about 6:20 P.M., November 16, 1968, an elderly man, Herbert D. White, stopped his car at the intersection of Highway 11, East, and the Piney Flats Road in Sullivan County and proceeded across the highway. The surface was dry. Three service stations occupy corners of the intersection, and a new branch bank is adjacent to a vacant lot on the fourth corner. Speed at this area is regulated at 45 miles per hour.

The State's proof showed that the defendant was proceeding in his automobile at a speed of 90 miles per hour or more and struck Mr. White's car, killing him almost instantly. A highway trooper observed the collision.

The odor of alcohol was on the defendant's breath; he told the trooper he drank four beers in a beer joint in Johnson City. An empty beer can was in his car. On account of a slight cut or scratch on his arm, the trooper took him to a hospital. On the way he was abusive of the officer, cursing him and calling him vile names about 25

times. When asked for his driver's license, he threw his billfold at the officer but then offered to hand it to him.

Although Trooper Hodges arrested the defendant for driving while intoxicated and second degree murder and was prosecutor of the two charges, he expressed no opinion on the question of intoxication at the trial. Another witness at the scene said the defendant appeared to be in shock or intoxicated.

After first refusing a blood test, the defendant later consented to one on the suggestion of a nurse. This test was taken at approximately 8:00 P.M. and a chemical analysis of it showed that the alcoholic contents of his blood was .135 percent by weight. By calculating according to the rate of decrease of alcohol in one's blood, the toxicologist was of the opinion that the alcoholic content of the defendant's blood was .165 percent at 6:30 P.M., about the time of the collision. On cross-examination he testified that a person's ability to drive is impaired when the alcoholic content of his blood is above .10 percent.

The defendant did not testify. His wife testified that two weeks before the collision the defendant's car would shimmy violently at any speed above 55 miles per hour and that it had not been repaired.

■ The court overruled the defendant's plea in abatement which alleged that the general sessions court dismissed the driving while intoxicated charge for failure of the State to establish probable cause and therefore that the State could not proceed against him by indictment for second degree murder based on driving while intoxicated.

He assigns this as error and says that the defendant could be prosecuted only by presentment.

The record shows that the facts relating to the plea in abatement were stipulated but they do not appear in the record. We think the allegations are without merit because the grand jury could indict the defendant whether or not the general sessions court bound him over to its action.

■ The defendant contends that he was physically and mentally incapable of understanding his rights to remain silent or to consent to the taking of his blood.

In a hearing out of the presence of the jury, the officer testified that he advised the defendant of his constitutional rights. In reply to the officer's questions, the defendant cursed and said it was none of his business. The officer asked no more questions. After about ten minutes, the defendant volunteered that he had four beers before the collision.

The defendant had no severe injuries. He had slight abrasions on his arm and chest but did not complain of any head injury. He went to the hospital only at the trooper's insistence. When he declined to have a blood test, the trooper said nothing further. Following a conversation with the nurse he agreed to it. We think none of his rights were violated by the admission of his volunteered statement or by taking his blood. See State v. Morris, Tenn., 456 S.W.2d 840.

■ The defendant contends that the result of the blood test was inadmissible because (1) there was not an unbroken chain of custody from the time the blood

was taken until it arrived at the state laboratory; (2) there was no proof of the actual time the blood was taken; and (3) the hospital deviated from its normal and customary procedure in handling the sample.

The laboratory technician testified that he was called by the nurse at about 8:00 P.M., and that he drew blood from the defendant, labeled the tube with the defendant's name and put the container in the refrigerator in the laboratory. The chief medical technologist at the hospital filled out the request for examination by the state department but he does not recall the date. It is contended that normal procedure is for this request to be made by one of the secretaries but the proof shows the custom that this administrator fills out the form when the secretaries are too busy to do it. The records show that the sample was mailed November 20, 1968. We think the time of taking and the normal procedure of the hospital were established.

Thirty-five or 36 employees work in the laboratory and doctors also have access to it.

The chain of evidence method of identification is a widely recognized concept in both civil and criminal law. In most cases it is not possible to establish the identity of an exhibit in question by a single witness. Several persons have usually handled the specimen before its analysis. See Annotation: 21 A.L.R.2d 1216; 29 Am.Jur.2d Evidence Sec. 830; 32 C.J.S. Evidence § 588(2).

Blood specimens such as this should be handled with the greatest of care and all persons who handle the specimen should be ready to identify it and testify to its

custody and unchanged condition. People v. Sansalone, 208 Misc. 491, 146 N.Y.S.2d 359 (1955).

■ Whether the requisite chain of possession has been sufficiently established to justify admission of the exhibit is a matter committed to the discretion of the trial judge and his determination will not be overturned in the absence of a clearly mistaken exercise thereof. State v. Brown, 99 N.J.Super. 22, 238 A.2d 482 (1968).

In Patterson v. State, 224 Ga. 197, 160 S.E.2d 815 (1968), a medical technologist took a blood specimen and placed the sample in four tubes, personally labeled them and put them in a refrigerator in the laboratory, Friday, June 9, 1967. The following Monday, June 12, 1967, the chief technologist ran a test. From Friday until Monday, approximately eight persons employed in the laboratory had access to the refrigerator. The court said:

> "The evidence shows that the blood sample was handled in the normal course of testing and there is nothing in the record that creates a suspicion that the blood tested was other than that taken from the defendant. The identity of such blood samples need not be proved beyond all possibility of doubt or that all possibility of tampering with them be excluded. The circumstances need only establish reasonable assurance of the identity of the sample."

The assignments on the admissibility of the blood test are overruled.

■ The defendant contends as too remote the testimony of a witness that the defendant passed him three or four miles from the collision at a speed of 90 to 100

miles per hour. We think the speed of the defendant less than two minutes before the collision was not too remote and was admissible.

We do not think the defendant has sustained the burden of showing that the evidence preponderates against the verdict of guilty of involuntary manslaughter and in favor of his innocence.

■ The conviction under the driving while intoxicated presentment and fine of $100 must be reversed under the authority of Patmore v. State, 152 Tenn. 281, 277 S.W. 892, and Hardin v. State, 210 Tenn. 116, 140, 355 S.W.2d 105. In *Patmore,* the court said:

> "The principle upon which the decisions in these cases rest is that two or more separate offenses which are committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense, are susceptible to but one punishment."

■ In cumulative-punishment cases growing out of the same state of facts, the court refers the verdict to the highest offense and affirms the judgment on that charge while the judgment on the lower is reversed.

The judgment in this case will be modified to limit the conviction and sentence to involuntary manslaughter. The judgment of conviction for driving while intoxicated is therefore reversed and dismissed and the judgment of conviction for involuntary manslaughter is affirmed.

OLIVER and DWYER, JJ., concur.