IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 5, 2022 Session

FILED
03/30/2022
Clerk of the
Appellate Courts

**STATE OF TENNESSEE v. JIMMY EVAN MILSTEAD**

**Appeal from the Circuit Court for Hardin County**
**No. 18-CR-200      Charles C. McGinley, Judge**
_____

**No. W2020-01705-CCA-R3-CD**
_____

The Defendant-Appellant, Jimmy Evan Milstead, was convicted by a Hardin County criminal court jury of unlawful possession of a weapon, driving on a revoked license, and evading arrest. On appeal, the Defendant contends that the trial court erred in 1) failing to suppress a rifle discovered in the car that the Defendant was driving; and 2) in admitting the rifle after the rifle was left in the Defendant's car for 26 days in an impound lot. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Jessica F. Butler, Franklin, Tennessee, for the Defendant-Appellant, Jimmy Evan Milstead.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Vance W. Dennis and Carthel Smith, Assistant District Attorney Generals, for the Appellee, State of Tennessee.

**OPINION**

On November 19, 2018, the Hardin County Grand Jury returned a three-count indictment against the Defendant, charging him with unlawful possession of a weapon, driving on a revoked license, and evading arrest. The charges stemmed from the April 6, 2018 attempted traffic stop of the Defendant by Tennessee Highway Patrol ("THP"). Trooper Steve Long initiated his blue lights in an attempt to conduct a traffic stop of the Defendant after noticing his car swerving in between lanes. After stopping the car, the Defendant fled the scene on foot into a wooded area, and his passenger was arrested. The

passenger also informed the trooper that there was a loaded rifle in the car. Not knowing that the Defendant was a felon and barred from lawfully possessing the rifle, the trooper had the car impounded with the rifle still inside. Later, the owner of the lot where the car was impounded called police and asked them to remove the rifle from the car lot for safety reasons. The rifle was removed and placed into storage by the Savannah Police Department ("SPD"), where it was held until the trooper later collected it.

Prior to trial, the Defendant filed three motions in limine. The first, filed March 12, 2019, sought to suppress the rifle based mainly on chain of custody issues. The second motion in limine, filed the same day, sought to suppress the rifle based on illegal search and seizure. The third and final motion in limine, filed March 14, 2019, again sought to suppress the rifle based on chain of custody issues. The trial court held a collective motions hearing on August 22, 2019. The court overruled all three motions without hearing proof or making any findings of fact. The trial court entered a written order stating that the motions were overruled without testimony and that "during the jury trial, the State would have to prove the chain of custody of the seized rifle and ammunition."

At the September 10, 2019 trial, Amanda Cromwell testified that she was the passenger in the Defendant's Nissan sedan when it was stopped by Trooper Long on April 6, 2018. Cromwell explained that the Defendant was driving her back from Nashville when he began "driving irate[ly,]" and the vehicle traveling behind them called and reported the Defendant's driving to "the sheriff's department[.]" Cromwell asked the Defendant to pull over and let her drive, but he refused. The Defendant then turned around and began driving the opposite direction, and "two state troopers" pulled in behind the Defendant's car after he "turned in Dixie Drive[.]" The troopers "turned on the[ir] lights" when the Defendant turned onto Dixie Drive, and he stopped the vehicle in someone's driveway. The Defendant exited the vehicle and "went into the woods," and Cromwell exited the vehicle and told the troopers to "be careful" because there was "a gun in the car[.]" Cromwell stated that she let the Defendant drive because he "wanted to[,]" even though she knew he did not possess a valid license. She testified that the rifle was originally in the vehicle's trunk, and on the way back from Nashville, the Defendant stopped at a Walmart store and purchased ammunition for the rifle. After loading the rifle with the ammunition, the Defendant placed the rifle "in the driver's seat right beside him[.]" The Defendant told Cromwell that the US Marshals were "look[ing] for him" and that he "had warrants on him in Nashville[.]" Cromwell testified that after exiting the vehicle, she was arrested for possessing marijuana. She clarified that "Dixie Drive" was the drive of a man named Shelby Dixie.

On cross-examination, Cromwell testified that she gave a statement to troopers when she collected her clothing from the impound lot. She explained that the rifle was collected from the impound lot "that night." Cromwell stated that she was "on drugs" at

the time of the incident but was not using any illegal substances at the time of trial. She told the troopers about the loaded rifle in the vehicle "immediately" when it stopped because she "was scared" and "didn't want the officer to get hurt[.]" Cromwell explained that she did not say that the rifle belonged to the Defendant in her statement because she only knew "where he picked it up[.]" The Defendant told her that the vehicle belonged to "his friends from rehab[,]" though Cromwell gave him permission to place "her tags" on the car because "his had run out[.]"

On redirect examination, Cromwell testified that on the drive back from Nashville, the Defendant stopped the vehicle, and they both fired the rifle. On recross-examination, she agreed that she did not mention the US Marshals when she testified at the preliminary hearing.

SPD Investigator Timmy Keen testified that he collected the rifle from the impound lot. He described the rifle as an "old type military Chinese look[ing] rifle." Investigator Keen went to the impound lot to collect the rifle because the owner of the lot, Steven Delaney, asked the SPD to retrieve the loaded rifle from his lot. Investigator Keen did not "know anything about the case or wreck or anything about the car" when he went to the impound lot. He was also the SPD's "designated evidence custodian." Investigator Keen went to the impound lot on May 2, 2018, and recovered the rifle from the trunk of the Nissan. He then placed the rifle into the SPD evidence storage locker where it remained for "almost a month" until June 1, 2018, when Trooper Long collected it from the SPD. Investigator Keen testified that the rifle was "checked to see if it was stolen" and then "logged in and placed on a shelf and . . . placed into [the] evidence computer[.]" The rifle was placed on shelf AR10, where it stayed until it was picked up, which was documented. Investigator Keen identified "the actual evidence and property release" from when the rifle was signed out, which contained the Defendant's name and "shows that Steven Long, THP . . . badge number[] 1605, received that firearm on June the 1st, 2018" at 8:45 p.m. The "actual property room receipt" was received as an exhibit. Investigator Keen reiterated that he "never heard anything about" the case until he "got subpoenaed[.]"

On cross-examination, Investigator Keen reiterated that he recovered the rifle from inside of the Nissan's trunk, where Delaney had placed it after receiving the vehicle because he "didn't feel safe with it in there." Investigator Keen explained that he entered the rifle into the SPD evidence locker because "[a]ny property that comes into the [SPD], whether it's a lost wallet on the side or the road, it's checked into evidence." Investigator Keen put the Defendant's name on the rifle when he entered it into the SPD evidence locker because Delaney told him "who it was, who the trooper was[.]" He did not call the Defendant about the rifle, even though he "normally" would, because he had "prior knowledge that [the Defendant] was a convicted felon from a previous case of [his]."

THP Trooper Long testified that he was patrolling when he "noticed a car acting peculiar." He "pulled in Dixie Drive[] and noticed it was going in and out of this other road and pulled off." When Trooper Long turned on his lights, the vehicle "cut up in a driveway." Trooper Long exited his vehicle and approached the Nissan. Cromwell exited the passenger side and "threw up her hands" and told him that she had "marijuana in [her] bra" and started walking towards him. The Defendant "ran to a wooded area." Trooper Long placed Cromwell in handcuffs, and she told him that "there was a loaded gun in the car." There was "an old military rifle laying against the console" in "plain view[.]" He identified the rifle and explained that it was "an actual old Russian military" rifle with a distinguishable "star on the top[.]" There was one round in "the chamber and one in the magazine[,]" and Trooper Long found "10 more loaded cartridges." After finding the rifle, Trooper Long searched for the Defendant in the wooded area but was unable to locate him. He did not find any identification for the Defendant or Cromwell in the Nissan. Trooper Long "r[a]n a check" and learned that the Defendant's license was revoked. He filed charges for driving on a revoked license and evading arrest the following week and later filled the unlawful possession of a weapon charge after learning that the Defendant was a convicted felon.

Trooper Long testified that he left the rifle in the Nissan after arresting Cromwell because his sergeant told him to "put the firearm back in the vehicle" after he could not obtain a positive identification of the Defendant. He reiterated that he "was not aware that . . . it was unlawful for [the Defendant] to have a firearm" at the time he arrested Cromwell, and there was no "legal reason for [him] to take possession of th[e] firearm at that point[.]" After calling Delaney to tow the Nissan to his lot, he prepared a "tow slip" that described the Nissan and the contents of the Nissan, including the rifle. Around the "middle of May[,]" Cromwell contacted Trooper Long and asked if she could retrieve her clothing from the Nissan. Trooper Long went with Cromwell to the impound lot and took her written statement while they were there. After learning that the Defendant was a felon, Trooper Long went to the SPD to collect the rifle from Investigator Keen. Trooper Long "walked with [Investigator Keen] to the evidence locker where [Investigator Keen] brought [the rifle] out" and gave Trooper Long "an evidence tracker sheet[.]" Once in possession of the rifle, Trooper Long "signed it over to" his sergeant, who "delivered it to [the] custodian of evidence for the highway patrol[.]" The rifle was kept "locked up" at "headquarters in Jackson[.]" Trooper Long explained that the rifle was taken "directly to Jackson" and placed in "a lockbox for rifles only" in "a separate room" because his home station did not have a place to store it. The rifle stayed in Jackson until Trooper Long retrieved it the morning of trial.

On cross-examination, Trooper Long testified that Cromwell told him the Defendant pulled over and fired the rifle and "kept asking her over and over to fire it" and only stopped once she reluctantly fired the rifle. She also told Trooper Long that the rifle was not stolen

- 4 -

but that the Defendant had "acquired" it. Trooper Long agreed that he did not record the rifle's serial number until after retrieving it from the SPD. However, he knew it was "an old Russian . . . military rifle, 762, about 52[.]" Trooper Long did not recall whether he placed the rifle back inside the cab of the Nissan or in the trunk. Trooper Long testified that he took the rounds of out the rifle and the additional rounds he found before placing the firearm back inside the Nissan as required by departmental policy. The rifle was not in the Nissan when he accompanied Cromwell to Delaney's lot. He testified that after running the Nissan's VIN number, he learned the vehicle belonged to "Jackie Claiborne."

On redirect examination, Trooper Long testified that Cromwell "was very positive" about her statement that the Defendant was the driver of the Nissan. He agreed that the rifle was within reach of both the Defendant and Cromwell based on its location in the Nissan.

Following the close of the State's proof, the Defendant renewed his motion regarding the chain of custody of the rifle. The trial court found that the State had "clearly established" the chain of custody "through the lay person, as well as the officers" and again overruled the motion. The Defendant elected not to testify on his own behalf. The jury found the Defendant guilty of all three counts. The trial court sentenced the Defendant as a Range III persistent offender to concurrent sentences of 22 years for the unlawful possession of a weapon charge and 11 months 29 days each for the driving on a revoked license and evading arrest charges. The Defendant filed a motion for new trial on January 15, 2020, and an amended motion for new trial on March 9, 2020. The motion asserted that the trial court erred in denying the Defendant's motions in limine and in admitting the rifle into evidence. The motion was heard on November 23, 2020, and denied by written order on December 4, 2020. This timely appeal followed.

## ANALYSIS

**I. Suppression of Rifle.** The Defendant asserts that the trial court erred in not suppressing the rifle because it was "seized during a warrantless search that violated [the Defendant's] constitutional protection against unreasonable searches and seizures." The State responds that the Defendant lacks standing to challenge the search of the Nissan and seizure of the Rifle, and even if he did, the search was reasonable under the community caretaking doctrine. We conclude that the Defendant has waived this issue on appeal.

When this court reviews suppression issues, the prevailing party in the trial court "'is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Talley, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting State v. Odom,

928 S.W.2d 18, 23 (Tenn. 1996)). "'Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" State v. Hawkins, 519 S.W.3d 1, 32 (Tenn. 2017) (quoting Odom, 928 S.W.2d at 23). A trial court's findings of fact in a suppression hearing will be upheld, unless the evidence preponderates against them. Id. (citing State v. Bell, 429 S.W.3d 524, 528 (Tenn. 2014)). However, this court reviews the trial court's application of the law to the facts de novo with no presumption of correctness. Id. at 32-33 (citing State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001)).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. Pursuant to the exclusionary rule, evidence acquired as a direct or indirect result of unconstitutional police conduct will be suppressed as "fruit" of the initial constitutional violation. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391-92 (1920); Wong Sun v. United States, 371 U.S. 471, 484-86 (1963); see State v. Hill, 333 S.W.3d 106, 122-23 (Tenn. Crim. App. 2010). The reason the exclusionary rule was expanded to include evidence that is "the fruit of unlawful police conduct" was "to deter police from violations of constitutional and statutory protections." Nix v. Williams, 467 U.S. 431, 442-43 (1984).

We initially note that although the Defendant filed a motion in limine to suppress the rifle based on search and seizure issues, it was not addressed by the trial court in the hearing on the motions in limine. Instead, the transcript and written order reveal that the trial court only addressed the chain of custody issue. Further, when the Defendant renewed his motion at the close of the State's proof regarding suppressing the rifle for chain of custody reasons, the motion for suppressing the rifle based on illegal search and seizure was never renewed. Though the motion in limine regarding the search and seizure issue was listed in the motion for new trial, the Defendant did not assert any arguments regarding the search and seizure, and the trial court did not address the search and seizure issue. Instead, the trial court stated that it had "heard" the motion for new trial, and we reiterate that no arguments were made regarding the search and seizure at the hearing, and the trial court overruled the motion "in its entirety[.]" Accordingly, the record contains zero findings of fact regarding the issue of suppressing the rifle based on the allegedly illegal search and seizure.

Tennessee Rule of Appellate Procedure 36(a) states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." This court has also previously stated that, "[w]hen the defendant fails to bring a motion to the attention of the trial judge and have the trial judge rule upon the motion prior to trial, the defendant waives the issues raised in the motion." State v. Aucoin, 756 S.W.2d

705, 709 (Tenn. Crim. App. 1988) (citing State v. Burtis, 664 S.W.2d 305, 310 (Tenn.Crim.App.1983)). Thus, "[t]he mere filing of a motion to suppress is not sufficient to raise an issue for the court to decide. The proponent must bring the motion to the attention of the trial judge and obtain a ruling thereon; otherwise the issue is waived." State v. Marvin K. Ferguson, No. 03C01-9406-CR-00235, 1997 WL 401825, at *2 (Tenn. Crim. App. July 17, 1997); see also State v. Darryl Alan Walker, No. E2013-01913-CCA-R3-CD, 2014 WL 3888250, at *7 (Tenn. Crim. App. Aug. 8, 2014) (concluding that defendant waived suppression issue where he filed motion to suppress but did not argue the portion of the motion that he was trying to appeal); State v. Charles M. Thomas, No. M2000-02576-CCA-R3-CD, 2002 WL 122930, at *1 (Tenn. Crim. App. Jan. 23, 2002) (finding that the defendant waived the issue when he raised it in a motion to suppress but "failed to pursue" the motion prior to trial). Because the Defendant failed to actually argue the suppression issue regarding illegal search and seizure and failed to secure an actual ruling on that specific argument, he has waived this issue. The Defendant is not entitled to relief.

**II. Chain of Custody.** The Defendant next contends that the trial court abused its discretion in admitting the rifle because the State was unable to "establish a chain of custody" due to "law enforcement's decision to allow the weapon to remain unsecured and unattended for nearly a month[.]" The Defendant further asserts in his reply brief that because Delaney passed away prior to trial, chain of custody cannot be established without his testimony. The State responds that the State established chain of custody and "the rifle's identity and integrity directly through Trooper Long's testimony." The State further responds that even if the trial court did abuse its discretion, any error was harmless. We agree with the State.

"Generally, the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." State v. Franklin, 308 S.W.3d 799, 809 (Tenn. 2010) (citing State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court is found to have abused its discretion when it applies "an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" Lewis, 235 S.W.3d at 141 (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006)).

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Therefore, the question of whether tangible evidence has been properly authenticated is left to the discretion of the trial court. State v. Cannon, 254 S.W.3d 287, 295 (Tenn. 2008) (citing State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000); State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987)). The trial court's determination will not be disturbed in the

absence of a clearly mistaken exercise of such discretion.  State v. Holbrooks, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998) (citing Beech, 744 S.W.2d at 587).  Therefore, we will not reverse unless the "'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

To admit tangible evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. Cannon, 254 S.W.3d at 296; Holbrooks, 983 S.W.2d at 700 (citing State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982)).  This rule ensures that "'there has been no tampering, loss, substitution, or mistake with respect to the evidence.'"  Scott, 33 S.W.3d at 760 (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).  However, absolute certainty of identification is not required.  See State v. Kilpatrick, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000) (citing Ritter v. State, 462 S.W.2d 247, 250 (Tenn. Crim. App. 1970)).  In addition, the Tennessee Supreme Court has observed:

> Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering.  An item is not necessarily precluded from admission as evidence if the State fails to call all of the witnesses who handled the item.  Accordingly, when the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence.  On the other hand, if the State fails to offer sufficient proof of the chain of custody, the evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means.

Cannon, 254 S.W.3d at 295-96 (internal citations and quotation omitted).

At trial, Trooper Long testified that he placed the same rifle that he originally retrieved from the Nissan back inside the Nissan before having it towed.  The inventory slip from towing the Nissan reflected that it contained a rifle.  He explained that the rifle was easily identifiable because it was "an actual old Russian military" rifle with a distinguishable "star on the top[.]" Investigator Keen testified that he was called to Delaney's lot to retrieve the rifle by Delaney, who informed him that he placed the rifle inside the Nissan's trunk.  Investigator Keen described the rifle as an "old type military Chinese look[ing] rifle."  Investigator Keen described the procedures he used for checking the rifle into SPD's evidence locker and later transferring the rifle to Trooper Long's possession.  Trooper Long testified to the procedures he followed in transferring the rifle

to his sergeant and then to the Jackson THP headquarters, where it was stored until Trooper Long collected it the morning of trial. At trial, he also identified the rifle that he collected from Jackson as the same rifle he initially removed from the Nissan.

We begin by noting that the State is not required to "exclude every possibility of tampering." Cannon, 254 S.W.3d at 295-96 (internal citations and quotation omitted). In any event, the record shows the State sufficiently established a chain of custody for the rifle in this case. Trooper Long identified and authenticated the rifle. Moreover, the evidence presented at trial showed that Delaney placed the rifle in the Nissan's trunk at the impound lot, where it presumably stayed until Investigator Keen collected it from the trunk. Although Delaney was not called by the State at trial because he had already passed away, the State was not required to call every person who handled the rifle. Id. Delaney's "link" in the chain of custody was established through Investigator Keen, which was the only way for the State to establish such a link. Further, as noted above, Trooper Long testified to the uniqueness of this particular rifle and identified it at trial as the same rifle that he originally removed from the Nissan. The rifle in the instant case was clearly distinguishable from other firearms based on its markings and "Russian" or "Chinese" military origins. It was not, for example, a plain black handgun that could have easily been mistaken for another plain black handgun. Finally, even if the trial court did admit the rifle in error, we agree with the State that any error was harmless. Whether or not the actual rifle was admitted at trial did nothing to negate the testimony from Cromwell and Trooper Long that the Defendant, a felon, was in illegal possession of a firearm. The admission of the rifle did not impact the outcome of the trial because other proof easily established that the Defendant unlawfully possessed a weapon. The Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE

- 9 -