IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2010

**STATE OF TENNESSEE v.
BENJAMIN PATTERSON and CHARLES P. YOKLEY**

**Direct Appeal from the Criminal Court for Davidson County
No. 2008-D-4122     Cheryl Blackburn, Judge**

**No. M2009-01516-CCA-R3-CD-Filed September 26, 2011**

Defendants, Benjamin Patterson and Charles P. Yokley, were indicted by the Davidson
County Grand Jury for sale of less than .5 grams of cocaine within 1,000 feet of a child care
facility in Count 1 and delivery of less than .5 grams of cocaine within 1,000 feet of a child
care facility in Count 2.  Following a jury trial, Defendants were both convicted as charged,
and the trial court merged the delivery offenses with the sale offenses.  Defendant Patterson
was sentenced as a standard offender to serve three years incarcerated, and Defendant Yokley
was sentenced as a multiple offender to serve seven years incarcerated.  Both defendants
raise several issues on appeal, including the sufficiency of the convicting evidence, alleged
errors regarding the jury instructions, and the trial court's refusal to exclude certain evidence.
After a careful review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which D. KELLY THOMAS,
JR., J., joined.  DAVID H. WELLES, SP.J., not participating.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Benjamin Patterson; and
Sandra L. Welles, Franklin, Tennessee, for the appellant, Charles P. Yokley.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant
Attorney General, Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn,
Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

*Facts*

Officer Darryl Morton, of the Metro Nashville Police Department, testified that on November 20, 2007, he encountered a black man named "Wheezy," who had in his possession drug paraphernalia and a small amount of marijuana. Officer Morton testified that in lieu of being arrested, Wheezy assisted officers in making an undercover purchase of narcotics. Before the controlled "buy," Officer Morton searched Wheezy for any money or narcotics, found none, then gave him $100, and drove him in an unmarked police car to the Hallmark Inn at 309 West Trinity Lane, where there were other officers in the area ready to monitor any transaction through a wired listening device attached to Officer Morton.

Officer Morton drove into the parking lot and observed three men, one of whom was Defendant Patterson, standing on a second floor balcony. Officer Morton did not see Defendant Yokley. After Wheezy made another phone call, Defendant Yokley stepped outside onto the balcony from Room 218. Defendant Yokley called out to Wheezy, who was still in the car with Officer Morton, and Wheezy then walked up the steps and over to Defendant Yokley. Officer Morton then watched Wheezy walk inside Room 218 with a white female who had come out of the room with Defendant Yokley. Defendant Yokley spoke to Defendant Patterson, who then briefly walked inside Room 210 and came back out and appeared to hand something to Defendant Yokley. Officer Morton could not see what Defendants exchanged between each other. Defendant Yokley then walked into Room 218 briefly and came back out with Wheezy. It appeared to Officer Morton that Defendant Yokley then handed something to Defendant Patterson. Wheezy walked directly back to Officer Morton's car and gave Officer Morton the crack cocaine, approximately .4 grams, that he had purchased. The officers standing by arrived on the scene, and Defendant Patterson ran. Officer Morton saw him put something under a trash can.

Officer Morton took Wheezy to another location, searched him, and left him there. He then returned to the scene, where the other officers had taken both defendants and another man into custody. The other officers were looking for the money given to Wheezy for the purchase. Sergeant Rutzky found $80 of the purchase money under the trash can, where Officer Morton had seen Defendant Patterson put something. The remaining $20 was found on Defendant Yokley's person. Police searched Room 210 and found two rocks of cocaine, weighing a total of 22 grams, in the toilet, which had just been flushed. The room had been rented by Alicia Williams and there were five other men inside the room. Police also confiscated a beaker with cocaine residue, a hot plate and boiling water, two digital scales with cocaine residue, and a stolen 9-millimeter handgun with seven rounds and a magazine from Room 210. Officer Morton testified that Defendant Yokley waived his *Miranda* rights

and did not deny his involvement in the transaction, admitting that he was "just the middleman" and that he was "out there just trying to make gas money."

 TBI Agent Glen Glenn analyzed the substance that Wheezy purchased as .3 grams of crack cocaine, and the rocks taken from the toilet in Room 210 were 18 grams and 4 grams of cocaine.

Sergeant Charles Rutzky of the Metro Nashville Police Department supervised the narcotics team that worked the controlled drug purchase involving Defendants. He and other officers waited about 75 yards from the motel and monitored Officer Morton's electronic listening device. He watched Wheezy walk to the second floor balcony where several people were standing, but he did not observe an actual exchange of drugs.

Sergeant Rutzky and other officers moved in to make arrests after the transaction was complete. He took into custody three people who were standing on the balcony. He found $80 of the money used by Wheezy in the transaction under the trash, where he was directed to look by Officer Morton. Sergeant Rutzky found Defendant Yokley in either Room 218 or 219 with a white female. He found the other $20 on Defendant Yokley's person. Sergeant Rutzky also testified as to the drugs and other items found in Room 210. Sergeant Rutzky testified that Defendant Yokley was cooperative and wanted to discuss the incident.

David Kline, a supervisor of the mapping division of the Metro Nashville Planning Department, testified that he prepared a map centered on the property located at 300 West Trinity Lane. The map contained a computer-generated red line encompassing everything within a 1,000 foot radius of the address. Officer Morton marked the location of the motel on the map introduced through Mr. Kline's testimony, and the exhibit shows that the motel was within the 1,000 foot radius of the daycare center.

Gerri Walker testified that she was employed with the State's Department of Human Services in the Child Care Licensing Division. She testified that Small Wonders Child Care was operating at 300 West Trinity Lane through December 31, 2007. She testified that she visited the site on December 18, 2007, and the daycare was operational.

Neither of the defendants testified or presented any other proof at trial.

*Sentencing*

At the sentencing hearing, Demetra Hamilton testified that she was Defendant Patterson's fiancee. She had known Defendant Patterson for one and a half years. Prior to

his incarceration, they had lived together, and Defendant Patterson had maintained employment.

Defendant Patterson denied his involvement in the transaction, testifying that he was "at the wrong place at the wrong time." He testified that since he had been incarcerated, he had grown as a person and become "closer to . . . the higher power and [had gotten] a better outlook on life." He testified that he had children "out there" and that he was "ready to come home as a better person." He stated his intentions to enroll in school for auto body collision repair. He testified that he had no prior felony convictions but admitted that he had "three or five driving on suspended or driving with no driver's license, a simple possession and a simple assault."

Alexis Yokley, Defendant Yokley's wife, testified that they have three children together and that Defendant Yokley also had custody of his thirteen-year-old daughter, Mrs. Yokley's stepdaughter. About the incident, Defendant Yokley had told her that he had gone to the motel to borrow gas money. She testified that Defendant was a generous and friendly person and that he had contributed to the household. Since having lost Defendant Yokley's income, they had to move into a smaller apartment. Despite having a prior criminal record, Defendant Yokley had not "been in trouble in about eight years." He was employed and going to school. Defendant had also undergone a kidney transplant and was taking medication.

Emory Ward had worked with Defendant Yokley and had known him for approximately eight years. Mr. Ward testified that Defendant Yokley was a fun person and was missed by the people who worked with him. He testified that Defendant was a "good guy" who had "made some mistakes" and that Defendant had changed and matured in the eight years he had known him.

Defendant Yokley testified that had gone to the motel to meet a front desk employee because she had agreed to give him $20 for gas money. He knew that there were drug users at the motel, testifying that "[t]hings just go on openly all day everyday up there," but he testified that the police and the prosecutor "made a bigger deal out of it." He denied his involvement in the transaction and testified that the informant had bought drugs from the lady in Room 218. He testified that the $20 in his pocket, which Officer Morton testified at trial was part of the buy money, was the money that the front desk employee had given him. Defendant Yokley also testified that he had been in the "wrong place [at the] wrong time" and had exercised "poor judgment" by having associated with the people involved but that he had learned from his mistakes. Defendant Yokley testified that he was on probation at the time of his arrest. Defendant testified that he had been in school and employed and that he was attending GED classes while incarcerated.

*Sufficiency of the Evidence*

Both defendants challenge the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this Court substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Defendant Patterson asserts generally that the "weight of the evidence is insufficient to support the jury's verdict in both counts," but he fails to cite any portion of the record on appeal in support of his argument. The State contends, therefore, that Defendant Patterson has waived this issue. *See* Tenn. Ct. Crim. App. R. 10(b).

Defendant Yokley specifically contends that the evidence is insufficient to prove that the offense occurred within 1,000 feet of a school. Tenn. Code Ann. § 39-17-417(b)(3) makes it a criminal offense to "knowingly . . . sell a controlled substance." The Drug-Free School Zone Act states that a violation of Tenn. Code Ann. § 39-17-417, "or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a . . . preschool [or] child care agency . . . shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(I) for such violation." Tenn. Code Ann. § 39-17-432.

The testimony of Mr. Kline, Ms. Walker, Officer Morton, and the map introduced as an exhibit at trial, taken in a light most favorable to the State, all establish that the Hallmark Inn, where the offenses occurred, was within 1,000 feet of the Small Wonder Day Care, which was operating as a childcare center, on the date of the offenses. Also, taken in a light most favorable to the State, the proof adduced at trial establishes that on November 20, 2007, police organized a controlled buy of drugs at the Hallmark Inn. Officer Morton watched as the informant Wheezy took the prerecorded money he had given to him and walked into Room 218. Officer Morton saw Defendant Patterson hand something to Defendant Yokley in a "hand-to-hand" exchange before Defendant Yokley went inside Room 218. Wheezy then returned to Officer Morton's vehicle with what was later identified as .3 grams of crack cocaine. Before leaving the premises with Wheezy, Officer Morton saw Defendant Patterson put something under an outside trash can. Sergeant Rutzky later found $80 of the buy money under the same trash can and the other $20 on Defendant Yokley's person. Defendant Yokley did not deny his involvement in the transaction, admitting to Officer Morton that he was "just the middleman . . . out there trying to just make gas money."

The evidence is sufficient to support both defendants' convictions. Defendants are not entitled to relief on this issue.

*Jury Instructions*

Next, both defendants contend that the trial court erred by declining to instruct the jury on the lesser-included offense of simple possession or casual exchange. The State correctly concedes that simple possession and casual exchange are lesser-included offenses of sale or delivery of a controlled substance. *State v. Timothy Tyron Sanders*, No. E2000-00603-CCA-R3-CD, (Tenn. Crim. App. at Knoxville, filed Jan. 18, 2001); *State v. Grady Paul Gatlin*, No. M2000-02356-CCA-R3-CD, (Tenn. Crim. App. at Nashville, filed Sept. 25, 2001). The State asserts, however, that both defendants have waived this issue because they failed to file a formal written request for the instruction at trial.

Pursuant to Tenn. Code Ann. § 40-18-110(b):

> In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any lesser included offense charge.

Tenn. Code Ann. § 40-18-110(b); *see State v. Terry*, 118 S.W.3d 355, 359 (Tenn. 2003).

-6-

In addition to Defendants' waiver of the issue, they have also failed to show plain error. For plain error to exist, all of the following five factors must be proven:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). We need not consider all five factors when it is clear from the record that at least one of them cannot be satisfied. *State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). It is the defendants' burden to show that the trial court committed plain error.

The trial court addressed the issue at the hearing on Defendants' motions for new trial. The trial court noted that it had instructed the jury on the lesser-included offenses of facilitation and attempt, but "there was no evidence . . . that would have allowed [the court] to instruct on simple possession or casual exchange." Simple possession or casual exchange occurs when a person "knowingly possess[es] or casually exchange[s] a controlled substance . . . ." Tenn. Code Ann. § 39-17-418(a). A casual exchange occurs when the transfer of the controlled substance is made without design. *State v. Helton*, 507 S.W.2d 117, 120 (Tenn. 1974). A casual exchange contemplates a spontaneous passing of a small amount of drugs, for example, at a party with or without the involvement of money. *State v. Copeland*, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998).

In the case *sub judice*, the proof at trial established that Defendants intended to sell the cocaine. We agree with the trial court that there is no proof in the record to suggest that Defendants merely possessed the cocaine or casually exchanged it between themselves or Wheezy. Officer Morton testified that Wheezy made a phone call prior to arriving at the motel in order to set up the sale. When Officer Morton arrived with Wheezy, Defendant Yokley called out to Wheezy. Officer Morton saw Defendants exchange something between themselves, Defendant Yokley and Wheezy went inside Room 218 together, and Wheezy returned to Officer Morton's vehicle with the cocaine. Defendant Yokley was found in possession of part of the buy money, and the other part was found under a trash can where Officer Morton had seen Defendant Patterson put something.

The evidence does not support a jury instruction on casual exchange or simple possession. Both factor (c) and factor (e) of *Adkisson* cannot be satisfied. Accordingly, we do not find plain error. Defendants are not entitled to relief on this issue.

-7-

Defendants also contend that the trial court erred by failing to instruct the jury on the absence of "Wheezy" at trial. Both Defendants requested Tennessee Pattern Jury Instruction 42.16(a) in writing at trial. The State argues, however, that Defendant Patterson has waived this issue because his brief contains no references to the record as required by Tenn. R. App. P. 10(b), which states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

Nevertheless, we will address the issue. Under the missing witness rule, a party is entitled to argue that if it is peculiarly within one party's power to produce a witness whose testimony would naturally be favorable to that party, the failure to call that witness creates an adverse inference that the testimony would have been unfavorable. *State v. Francis*, 669 S.W .2d 85, 88 (Tenn. 1984) (citing *Graves v. United States*, 150 U.S. 118, 121 (1893)). Under the same criteria, a party may request that the trial court instruct the jury regarding the adverse inference of a missing witness. *See State v. Middlebrooks*, 840 S.W.2d 317, 334 (Tenn.1992), *overruled on other grounds by State v. Stout*, 46 S.W.3d 689 (Tenn. 2001). Generally, three conditions must be met before the inference is allowed: (1) the witness had knowledge of material facts, (2) the relationship between the witness and the party would naturally incline the witness to favor the party, and (3) the witness was available to the process of the court for the trial. *See Delk v. State*, 590 S.W.2d 435, 440 (Tenn. 1979).

We conclude that the first condition of the rule is met: the witness likely would have had knowledge of material facts, particularly ones that neither Officer Morton nor Sergeant Rutzy could provide. Wheezy could have provided direct evidence, rather than just circumstantial evidence, of who handled the cocaine and the money, and what was said by whom during the transaction. Wheezy had knowledge of the phone call prior to the transaction, as well as the actual sale of cocaine and what occurred inside Room 218, which Officer Morton did not personally observe. We also conclude that the record tends to suggest that the informant had a relationship with the State that would more naturally have been inclined to favor the State. However, we believe that the third condition of the missing witness rule was not satisfied in this case. The State asserted at trial that the identity of the informant was unknown to the prosecutor. The State knew the witness only by his street name, "Wheezy," and had insufficient information with which to serve him with process.

In his brief, Defendant Yokley asserts that the trial court's failure to instruct the jury on the Absent Material Witness instruction is error, particularly based on Officer Morton's testimony on cross-examination that he, at some point in time, had Wheezy's name and contact information in order to run an outstanding warrant search. On cross-examination by counsel for Defendant Yokley, Officer Morton testified, "I believe so" in response to counsel's question about whether a search had been run for outstanding warrants on Wheezy. He testified, "[t]hat's possible" in response to counsel's question as to whether he had

-8-

retrieved any identifying information about Wheezy. Officer Morton testified that he did not complete an incident report or issue a citation to Wheezy. We note that counsel for Defendant Patterson filed a motion in limine requesting that the trial court order the State to reveal Wheezy's identity and to provide counsel with adequate time to interview him. The motion was filed on March 2, 2009, the first day of trial, which as the trial court observed, is hardly sufficient time in which to have located the witness even if the State had been able to provide his information. When the trial court pointed out that it was "a little late to be filing that," counsel for Defendant Patterson stated to the trial court that counsel for Defendant Yokley had filed a similar motion "back in November to have the State reveal the identity of [Wheezy]." However, the discourse between the attorneys and the trial court suggests that the motion was never ruled upon. We find no order in the record reflecting a ruling on the issue, nor do we find a motion by Defendant Yokley seeking disclosure of Wheezy's identity. The only motion in limine filed by Defendant Yokley that is included in the record was filed on February 20, 2009, and it does not request disclosure of Wheezy's identity. Because the record does not reflect that Defendants made an effort before trial to procure Wheezy's identity, Defendants cannot now rely on the State's failure to provide it after that information was no longer available to the State.

Finally, we also note that in closing arguments, defense counsel argued the effect of Wheezy's absence. The State contends, therefore, that the jury was provided an opportunity to consider the impact of Wheezy's absence at trial even without the instruction. Because all of the conditions set forth in *Middlebrooks* and *Delk* have not been satisfied, we conclude that the trial court did not err by not instructing the jury as to the missing witness rules. Defendants are not entitled to relief on this issue.

Defendant Yokley makes additional arguments which are misplaced. He asserts that Wheezy's absence at trial was a violation of his constitutional right to confront his accuser under the Sixth Amendment. The Constitution requires that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI; *see* Tenn. Const. art. I, § 9. However, no out-of-court statements made by Wheezy were introduced through Officer Morton's testimony. Officer Morton and Sergeant Rutzky both testified only to what they personally observed. Therefore, Confrontation Clause analysis does not apply to this case. Defendant Yokley also cites *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963), and asserts that the State had a duty to provide the identity of the cooperating individual and that such information would have been exculpatory at trial. There is nothing in the record to suggest that the cooperating individual would have provided exculpatory evidence at trial. Nevertheless, we will address the issue of the State having not provided the defendants with the identity of the cooperating individual.

We review the trial court's decision about whether to compel disclosure of a cooperating individual for an abuse of discretion. *See State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009). The State is generally not required to divulge the identity of a cooperating individual to the defendant unless the defendant can establish by a preponderance of the evidence one of the following: (a) disclosure would be relevant and helpful to the defendant in presenting his defense and is essential to a fair trial; (b) the informant was a participant in the crime; (c) the informant was a witness to the crime; or (d) the informant has knowledge which is favorable to the defendant. *State v. Vanderford*, 980 S.W.2d 390, 397 (Tenn. Crim. App. 1997).

It is evident that Wheezy was both a witness to the crime and a participant in the crime; however, there is no indication in the record that he had knowledge that would have been favorable to Defendants or that his identity would have been helpful to the defense or essential to a fair trial. Officer Morton testified on cross-examination that he knew, at one time, the identity of the informant because he believed he had requested that the warrants division run an outstanding warrant check on him, but he did not have that information at trial, and the prosecutor was never able to locate Wheezy. As we already noted, Defendant Patterson filed a motion in limine on the first day of trial asking the trial court to order the State to reveal the identity of the cooperating individual and to provide defense counsel with adequate time to interview him. The prosecutor informed the court that the State did not have the identity of the informant, and the trial court stated, "I can't order the State to provide you information they do not have. That's not possible. Now, I would suggest to you that what you have is an issue that would be better raised at a Rule 29 [Tenn. R. Crim. P.]. That is, if they can't prove their case, they can't prove it. And you can cross- examine them all you want about that. But I can't order them to give them [sic] information that they don't have."

We cannot conclude that the trial court abused its discretion by not ordering the State to provide Defendants with information the State did not have. Defendants are not entitled to relief on this issue.

*Exclusion of Testimony Concerning Potentially Exculpatory Evidence*

Defendants assert that the money used to purchase the cocaine, or photocopies of the money, was exculpatory evidence that was not provided to him prior to trial. He further asserts that the trial court should not have allowed the State's witnesses to testify regarding the money.

Officer Morton testified that it is the usual practice of the police department to record the serial numbers from the purchase money used in drug transactions rather than mark the

-10-

money. In this case, the money used to purchase the drugs was prerecorded and photocopied. After the transaction, Morton matched the money found to the photocopies made of it beforehand; however, Morton could not locate the photocopies or the original money before Defendants' trial.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides for every defendant the right to a fair trial. To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution any exculpatory evidence that is either material to guilt or relevant to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 110-11 (1976).

*State v. Ferguson* governs claims regarding the State's duty to preserve potentially exculpatory evidence. 2 S.W.3d 912, 917 (Tenn. 1999). "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." *Id*. (internal footnote omitted). The analysis under *Ferguson* is only triggered, however, if the alleged exculpatory evidence is determined to be material. *Id*. To be material, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. Once the court determines that the evidence is material and the State failed in its duty to preserve the evidence, *Ferguson* requires the trial court to consider the following factors which bear upon the consequences of the State's breach of its duty: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction." *Id*. (internal footnote omitted).

The *Ferguson* Court stated:

> The analysis of both *Brady* and *Agurs* concerns the prosecution's suppression of "plainly exculpatory" evidence. This strikes a sharp contrast to the case under review wherein the existence of the destroyed videotape was known to the defense but where its true nature (exculpatory, inculpatory, or neutral) can never be determined.

Defendants do not assert *how* the buy money or photocopies would have exculpated them. This Court has previously stated that "the mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under

-11-

*Ferguson.*" *State v. Ronnie D. Sims*, No. M2004-02491-CCA-R3-CD, 2005 WL 3132441 at *8 (Tenn. Crim. App. at Nashville, Sept. 21, 2005) (citing *State v. Coulter*, 67 S.W.3d 3, 54-55 (Tenn. Crim. App. 2001)), *perm. to appeal denied* (Tenn. Mar. 20, 2006). In this case, Officer Morton testified that he was "[p]ositive" that he matched the serial numbers of the buy money to the photocopies, and the defendants were found to have had the money in their possession. As the trial court noted, there was "absolutely nothing in this record that would indicate that [the evidence] would be favorable to the defendant." Defendants are not entitled to relief on this issue.

Defendant Yokley also contends that the trial court's instruction to the jury regarding the buy money was error. The trial court instructed the jury on the relevant portion of Tennessee Pattern Jury Instruction 42.23, which states:

> The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of such a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

The trial court denied Defendant Yokley's request to charge the jury with the remaining portion of the instruction, which states:

> If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are an issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

The trial court concluded that the State "has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value." There is nothing in the record at trial to suggest that the evidence would have benefitted or exculpated Defendant. Moreover, as the State points out, Defendant Patterson cross-examined Officer Morton regarding the absence of the buy money at trial, but the jury credited his testimony. Defendant Yokley is not entitled to relief on this issue.

*Chain of Custody*

Defendant Yokley asserts that the State failed to establish a proper chain of custody for the crack cocaine purchased by Wheezy, and therefore, the evidence should not have been

admitted. The State responds that although the issue was brought up in the motion for new trial, Defendant has waived this issue by failing to raise a contemporaneous objection at trial. At no point during the State's introduction of the crack cocaine as evidence or during the State's direct examination of Officer Morton regarding his collection of it did either defense counsel raise an objection as to the chain of custody. The failure to object at trial results in a waiver of the alleged error. Tenn. R.App. P. 36(a). Further, the question of whether the requisite chain of possession has been sufficiently established to justify admission of an exhibit is a matter committed to the discretion of the trial judge and his determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. *State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984) (citing *Ritter v. State*, 3 Tenn. Crim. App. 372, 462 S.W.2d 247 (1970)).

In the case *sub judice*, Officer Morton identified the crack cocaine offered as an exhibit at trial. He testified that he received it from Wheezy and placed it vehicle's cup holder while he drove Wheezy to another location. When he returned, he "field tested" it and confirmed that it was crack cocaine. He placed it into a bag, wrote its contents on a property sheet, and turned it in to the property room where it was assigned an incident number and sent to the TBI for further testing before being returned to the property room. Nothing in the record suggests any tampering with the evidence. The trial court did not abuse its discretion in determining at the motion for new trial hearing that a sufficient chain of custody had been established. This issue is without merit.

### *Relevance of the Evidence*

Finally, Defendant Yokley contends that the evidence found in Room 210, including 22 grams of crack cocaine, a beaker and digital scales, both with cocaine residue, and a 9 millimeter handgun, should have been excluded under Tenn. R. Evid. 403 because its probative value was substantially outweighed by undue prejudice. The State again asserts that Defendant has waived this issue because his one-paragraph argument contains no references to the record and insufficient argument as required by Tenn. R. App. P. 10(b). Regardless, we conclude that the evidence was properly admitted.

The admissibility of evidence on relevancy grounds rests within the sound discretion of the trial court, and this court will not interfere with the exercise of this discretion absent a clear abuse. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)).

Tennessee Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 403 provides, "[a]though relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Defense counsel objected on the grounds of relevance to testimony of Officer Morton about the items found in Room 210. The trial court ruled that the evidence was "highly relevant to what the issue is, selling and delivering" based on Officer Morton's testimony that Defendant Patterson had gone "into Room 210 and then hand[ed] stuff to [Defendant] Yokley." We agree. The trial court did not abuse its discretion by admitting the evidence. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we find no error and affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE